**LEVI & KORSINSKY LLP**
Eduard Korsinsky (EK-8989)
235 Main Street
Hackensack, New Jersey 07601
Tel.:  (973) 265-1600
Fax:  (22) 363-7171
Email: ek@zlk.com

*Counsel for Movant Hoyt W. Clark*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BIXING PENG, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>v.<br><br>AGILE THERAPEUTICS, INC., ALFRED ALTOMARI, and ELIZABETH GARNER,<br><br>                Defendants. | Case No. 2:17-cv-00119-AET-LHG<br><br>**MEMORANDUM OF LAW IN SUPPORT OF HOYT W. CLARK'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>**MOTION DATE: April 3, 2017** |
| ANDREA LICHTENTHAL, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>v. | Case No. 3:17-cv-00405-AET-LHG |

AGILE      THERAPEUTICS,      INC.,
ALFRED          ALTOMARI,          and
ELIZABETH GARNER,

Defendants.

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

II.    STATEMENT OF FACTS ...........................................................................3

III.   ARGUMENT ...............................................................................................6

    A.  The Actions Should Be Consolidated ...........................................................6

    B.  The PSLRA Standard for Appointing Lead Plaintiff ...................................7

    C.  Movant is the "Most Adequate Plaintiff" under the Exchange Act .............8

      1.  Movant is Willing to Serve as Class Representative ...................................9

      2.  Movant Has the Largest Financial Interest in the Relief Sought by the Class ...................................................................................................................9

    D.  Movant is Qualified Under Rule 23 ...........................................................11

      1.  Movant's Claims are Typical of the Claims of the Class ........................13

      2.  Movant Will Fairly and Adequately Represent the Class' Interests ........13

      3.  This Court Should Approve Movant's Choice of Counsel ......................15

IV.    CONCLUSION……………………………………………………………….16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,

216 F.R.D. 567 (D.N.J. 2003) ................................................................7

*In re Cendant Corp. Litig.*,

264 F.3d 201 (3d Cir. 2001) ......................................................... 10, 12

*Johnson v. Celotex Corp.*,

899 F.2d 1281 (2d Cir. 1990) ............................................................6, 7

*Lax v. First Merch. Acceptance Corp.*,

No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...............10

*In re Lucent Technologies Inc. Sec. Litig.*,

221 F. Supp. 2d 472 (D.N.J. 2001).......................................................7

*In re Merck & Co., Inc. Securities*,

No. 05-cv-1151, 2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 20, 2013) .............13

*Mitchell v. Complete Mgmt., Inc.*,

No. 99-CV-1454 (DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999)...............6

*In re Nice Sys. Sec. Litig.*,

188 F.R.D. 206 (D.N.J. 1999) .............................................................10

*In re Olsten Corp. Sec. Litig.*,

3 F. Supp. 2d 286 (E.D.N.Y. 1998)......................................................10

*In re Opnext, Inc.*,

   No. 08cv-0920, 2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008)......... 10, 12

*In re PharmaPrint, Inc. Sec. Litig.*,

   No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845 (D.N.J. April 17, 2002) .... 13, 14

*Primavera Familienstiftung v. Askin*,

   173 F.R.D. 115 (S.D.N.Y. 1997).............................................................................6

*Sklar v. Amarin Corp. PLC*,

   Civil Action No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248 (D.N.J. July 29,

   2014) ..................................................................................................... 10, 12

*Weltz v. Lee*, 199 F.R.D.

   129 (S.D.N.Y. 2001)...............................................................................................6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A) .......................................................................................8

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................... passim

15 U.S.C. § 78u-4(e) ...............................................................................................11

**Rules**

Fed. R. Civ. P. 23(a)....................................................................................... 12, 14

Fed. R. Civ. P. 42(a)............................................................................................6, 7

Hoyt W. Clark ("Clark" or "Movant"), by counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for entry of an order: (i) consolidating the above-captioned actions ("Actions"); (ii) appointing Movant as Lead Plaintiff; (iii) approving Movant's selection of the law firm of Levi & Korsinsky LLP ("Levi & Korsinsky") to serve as Lead Counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v); and (iv) granting such other and further relief as the Court may deem just and proper.

## I.   INTRODUCTION

Presently pending in this District are the two above-captioned securities class actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against Agile Therapeutics, Inc. ("Agile" or the "Company"), the Company's President and Chief Executive Officer, Alfred Altomari ("Altomari"), and the Company's Chief Medical Officer, Elizabeth Garner ("Garner") for violations of federal securities laws on behalf of a class of purchasers

of the securities of Agile Therapeutics between March 9, 2016, and January 3, 2017, inclusive (the "Class Period").[1]

Pursuant to the PSLRA, this Court must appoint the member of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Movant believes he is entitled to appointment as Lead Plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure.  During the Class Period Movant sustained approximately $58,983.85 in losses as a result of purchasing shares of Agile securities at artificially inflated prices.[2]  Movant also respectfully requests that the Court approve Levi & Korsinsky as Lead Counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").

---

[1]  The Actions are entitled: (i) *Peng v. Agile Therapeutics, Inc. et al.,* 2:17-cv-00119-AET-LHG (the "*Peng* Action"); and (ii) *Lichtenthal v. Agile Therapeutics, Inc. et al.,* 3:17-cv-00405-AET-LHG (the "*Lichtenthal* Action).

[2] *See* Declaration of Eduard Korsinsky in Support of Hoyt W. Clark's Motion for Consolidation of the Actions, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, dated March 7, 2017 ("Korsinsky Decl."), Ex. A (Movant's PSLRA certification); Ex. B (Movant's loss chart).

## II.   STATEMENT OF FACTS

Agile develops women's healthcare products.  ¶ 2.[3]  The Agile's lead product is Twirla, its hormonal contraceptive patch.  During the Class Period, the Complaint alleges that Defendants failed to disclose that: (i) the Twirla had an efficacy rating inferior to peer group standards; (ii) more than half of patients in its "SECURE" Phase 3 clinical study of Twirla discontinued the study prematurely; and (iii) therefore the U.S. Food and Drug Administration ("FDA") would likely not approve the Twirla patch marketing application.  ¶ 3.

At the beginning of the Class Period on March 9, 2016, the Company issued a press release announcing fourth quarter and full year 2015 results.  The press released stated in relevant part that: "This past year was a productive one for Agile as we completed enrollment in our SECURE clinical trial and expanded our intellectual property portfolio," said Al Altomari, Chief Executive Officer and President of Agile. "We have continued our momentum into 2016 by strengthening our cash position through the completion of our common stock offering, and we believe we are now well-positioned to advance Twirla® through the clinic. We look

---

[3]  Citations to "¶ __" are to paragraphs of the Class Action Complaint For Violations of the Federal Securities Laws (the "Complaint") filed in the *Peng* Action.  The facts set forth in the Complaint are incorporated herein by reference.

forward to Twirla becoming the first low-dose combined hormonal contraceptive patch for women." ¶ 16.

On the same day, the Company filed its annual report on Form 10-K with the SEC, and reaffirmed the Company's belief that the SECURE study would support the Twirla FDA marketing application. ¶ 17. This Form 10-K also discussed the Company's framework of the SECURE study. ¶ 18.

On May 9, 2016, the Company issued a press release announcing the first quarter 2016 fiscal results. ¶ 19. This press release also discussed the SECURE clinical trial, stating the Company had made significant progress during the first quarter of 2016 by improving its cash position through the completion of its common stock offering, and the Company's continued expectations to complete the SECURE trial in the fourth quarter of 2016. *Id*.

On August 8, 2016, Agile published a press release announcing second quarter 2016 results. ¶ 21. In this press release, the Company further discussed the success of the SECURE clinical trial stating that, during the first half of this year, they believed they had made significant progress on the execution of their business strategy to build a commercially competitive women's health. *Id*. In addition, the Company continued to represent that it expected to complete the SECURE trial in the fourth quarter 2016 and its belief that it would be able to expand its market potential through Twirla and its pending marketing application. *Id*. On the same

4

day, the Company also filed a quarterly report on Form 10-Q with the SEC that reaffirmed the Company's belief that the SECURE study would support the Twirla FDA marketing application.  ¶ 22.

On November 7, 2016, the Company published a press release announcing third quarter 2016 results.  ¶ 23.  In this press release the Company, announced the completion of subject visits for the SECURE clinical trial.  *Id.*  Again, the Company touted the progress and success of the SECURE clinical trial.  *Id.*  That same day, the Company filed a quarterly report on Form 10-Q with the SEC, and reaffirmed the Company's belief that the SECURE study would support the Twirla FDA marketing application.  ¶ 24.

Then, on January 3, 2016, the truth emerged when the Company issued a press release announcing top line results from the SECURE clinical study.  ¶ 26.  In this press release, the Company stated, in part, that the Twirla patch's efficacy measure, known as its "Pearl Index", was 4.80, which consequently meant that Twiral failed to meet the industry standard for FDA approved contraceptives as the highest Pearl Index for a hormonal contraceptive product approved by the FDA is 3.19.  *Id.* Additionally, the press release also announced that 51.4% of patients failed to continue the study to completion.  *Id.*  On this news, Agile's share price fell $2.37, or nearly 50%, to close at $2.63 on January 4, 2017, on unusually heavy trading volume.  ¶ 27.

## III.   ARGUMENT

### A. The Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B) (ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints

6

arise generally from the same alleged false and misleading statements.

The Actions pending before this Court present similar factual and legal issues, as they all involve the same subject matter, are based on the same wrongful course of conduct, and name substantially the same defendants.  Because the Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery, similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate.  *See Celotex Corp.*, 899 F.2d at 1285; *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003); *In re Lucent Technologies Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001).

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the Lead Plaintiff issue "[a]s soon as practicable."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Here, a prompt determination is reasonable and warranted under Rule 42(a), given the common questions of fact and law presented by the Actions now pending in this District.

**B.  The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1); *see* 15 U.S.C. § 78u-4(a)(3)(B).  Specifically, within 20 days after the date on which a class action is filed, the plaintiff shall cause to be published, in a widely

circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiff or purported class members to serve as Lead Plaintiff in response to any such notice within 90 days after the date of publication of the notice. 15 U.S.C. § 78u-4(a)(3)(B). Under the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

> (aa)   has either filed the complaint or made a motion in response to a notice . . .;

> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of    Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## C. Movant is the "Most Adequate Plaintiff" under the Exchange Act

Movant respectfully submits that he is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, have the largest financial

interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. Further, Movant has selected and retained counsel experienced in the prosecution of securities class actions to represent the proposed class. *See* Korsinsky Decl., Ex. D (Firm Resumé of Levi & Korsinsky). Accordingly, Movant satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and, therefore should be appointed Lead Plaintiff.

### 1. Movant is Willing to Serve as Class Representative

On January 6, 2017, Plaintiff in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Defendants and which advised putative class members that they had sixty days from the date of the Notice to file a motion to seek appointment as a Lead Plaintiff in the action.[4] Movant has reviewed a complaint filed in the pending Actions and have timely filed this motion pursuant to the Notice.

### 2. Movant Has the Largest Financial Interest in the Relief Sought by the Class

Under the Exchange Act, a rebuttable presumption exists whereby the movant with the largest financial interest in the litigation and who otherwise satisfies the

---

[4] The Action was filed in this Court on January 6, 2017. On that same day, the Notice was published over *BusinessWire*, a widely circulated national business oriented wire service. *See* Korsinsky Decl., Exhibit C.

requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action.  15 U.S.C. § 78u-4(a)(3)(B)(iii); *Sklar v. Amarin Corp. PLC*, Civil Action No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248, at *4 (D.N.J. July 29, 2014); *see also In re Opnext, Inc.*, No. 08cv-0920, 2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008).  In determining the "largest financial interest" for purposes of lead plaintiff appointment, courts in the Third Circuit consider (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiff during the class period; and (3) the approximate losses suffered by the plaintiff. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) ("[W]e agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiff during the class period; and (3) the approximate losses suffered by the plaintiff (citing *Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (same)"); *see also Sklar*, 2014 WL 3748248, at *4.

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the

misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the greater of the price they sold the shares or the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

During the Class Period, Movant sustained losses in the amount of approximately $58,983.85 as a result of purchasing Agile securities at artificially inflated prices.  *See* Korsinsky Decl., Ex. B.  Movant is not aware of any other movant with a larger financial interest and believe he has the largest financial interest of any lead plaintiff movant.   Therefore, Movant is presumptively entitled to appointment as the Lead Plaintiff.

### D.  Movant is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if  the following four requirements are satisfied:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

For purposes of appointing lead plaintiff, the determination of whether the movant with the largest interest in the case otherwise satisfies Rule 23 "should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy." *Sklar*, 2014 WL 3748248, at *5, citing *In re Cendant Corp. Litig.*, 264 F.3d at 262.  The presumption that the movant with the largest financial interest is the most adequate plaintiff to lead the action may be rebutted only upon **proof** that the movant (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render such movant incapable of adequately representing the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), *In re Opnext, Inc.*, 2008 U.S. Dist. LEXIS 60678, at *7- 10; *see also Sklar*, 2014 WL 3748248, at *4.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representatives. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

As detailed below, Movant satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff in the Actions.

### 1. Movant's Claims are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, and (2) the claims are based on the same legal theory. *See In re Merck & Co., Inc. Securities*, No. 05-cv-1151, 2013 U.S. Dist. LEXIS 13511, at *39-40 (D.N.J. Jan. 20, 2013), *In re PharmaPrint, Inc. Sec. Litig.*, No. 00-cv-00061, 2002 U.S. Dist. LEXIS 19845, at *16 (D.N.J. April 17, 2002).

The claims asserted by Movant are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. Movant purchased shares of Agile securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. Thus, Movant satisfies the typicality requirement of Rule 23(a).

### 2. Movant Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A movant can demonstrate adequacy by showing that "(a) the [movant's] attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the [movant] must not have interests antagonistic to those of the class." *In re PharmaPrint, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 19845, at *16-17. Here, Movant's interests are clearly aligned with the members of the proposed class. Not only is there no evidence of any antagonism between Movant's interests and those of the class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that the Movant will vigorously pursue the interests of the Class. As detailed above, Movant's claims raise similar questions of law and fact as claims of the members of the class, and Movant's claims are typical of the members of the class. Further, Movant has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff, as reflected in his signed certifications. *See* Korsinsky Decl., Ex. A. Having suffered substantial losses, Movant will be a zealous advocate on behalf of the class.

In addition, Movant has selected Levi & Korsinsky – counsel highly experienced in prosecuting securities class actions – to represent them. *See* Korsinsky Decl., Ex. D.  Thus, the close alignment of interests between Movant and other class members, and Movant's strong desire to prosecute the Actions on behalf of the class, provide ample reason to grant Movant's motion for appointment as Lead Plaintiff in the Actions.

Accordingly, at this stage of the proceedings, the Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because the Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, they are, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

### 3.  This Court Should Approve Movant's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has retained Levi & Korsinsky to file moving papers on behalf of themselves seeking appointment as Lead Plaintiff and to serve as lead counsel to pursue this litigation on behalf of Movant and the class.  Levi & Korsinsky attorneys have extensive experience in the area of securities litigation and have successfully

prosecuted numerous securities class actions on behalf of injured investors.  *See* Korsinsky Decl., Ex. D.

## IV.    CONCLUSION

Movant has satisfied each of the PSLRA's requirements for appointment as Lead Plaintiff.  As such, Movant respectfully requests that the Court consolidate the Actions, appoint them as Lead Plaintiff, approve his selection of counsel, and grant such other relief as the Court may deem just and proper.


Dated:  March 7, 2017                      Respectfully submitted

                                           **LEVI & KORSINSKY LLP**

                                           /s/ Eduard Korsinsky
                                           Eduard Korsinsky
                                           235 Main Street
                                           Hackensack, New Jersey 07601
                                           T: (973) 265-1600
                                           F: (212) 363-7171

                                                -and-

                                           Nicholas I. Porritt
                                           Adam M. Apton
                                           1101 30th Street N.W., Suite 115
                                           Washington, D.C. 20007
                                           Tel: (202) 524-4290
                                           Fax: (202) 333-2121
                                           Email: nporritt@zlk.com
                                           Email: aapton@zlk.com
                                           (*pro hac vice* forthcoming)

                                           *Counsel for Movant Hoyt W. Clark, and Proposed Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I, Eduard Korsinsky, hereby certify that on March 7, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/Eduard Korsinsky*
Eduard Korsinsky